CR-02-0739

In the COURT of CRIMINAL APPEALS
of ALABAMA

◆

Jerry E. WHITLEY,

Appellant,

v.

STATE of Alabama,

Appellee.

◆

On Appeal From the Circuit Court of
Russell County (CC-02-186, 187, 188)

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

Stephen N. Dodd
*Assistant Attorney General*
Counsel of Record*

Attorneys for Appellee
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama   36130-0152
(334) 242-7300*

September 5, 2003



**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CONTENTS........................................ ii

TABLE OF AUTHORITIES.................................... iv

STATEMENT OF THE CASE.................................... 1

ISSUES PRESENTED FOR REVIEW............................. 3

STATEMENT OF THE FACTS.................................. 4

STANDARD OF REVIEW...................................... 6

SUMMARY OF ARGUMENT..................................... 7

ARGUMENTS.............................................. 8

  I.  The trial court was correct in denying Whitley's
*Motion to Suppress* the State's drug evidence. ........... 8

    A.  At the time they confronted Whitley at the door
of his trailer, the Task Force agents were engaged
in mere questioning of Whitley, an activity that
required neither reasonable suspicion, nor probable
cause.................................................. 8

    B.  For their own safety, the agents at Whitley's
front door had a right to remove the wrench from his
pocket, even though they *may not* have had reasonable
suspicion to believe he was, at that time, involved
in a criminal activity................................. 9

    C.  When, while being arrested for possession of
methamphetamine outside his trailer, Whitley began
yelling for someone inside the trailer to "blow it
up", an exigent circumstance allowing the agents
outside the trailer to go inside was created......... 10

D.   Seizure of evidence, pursuant to a search
warrant obtained on the basis of information
obtained during an exigent circumstance entry of
Whitley's trailer, is legal........................... 11

II.  The trial court did not err in denying the
motions filed by Whitley that would have allowed him to
offer the live testimony of a defense forensic expert
evidence. ........................................... 11

III.  The State's evidence was sufficient to support
Whitley's convictions for possession of methamphetamine,
and resisting arrest. ............................... 15

IV.  Whitley's sentence of thirty-five years
imprisonment for methamphetamine trafficking does not
constitute unconstitutionally cruel, unusual, and/or
disproportionate. ................................... 17

    A.   Whitley failed to preserve for appellate review
    any claim relating to he constitutional propriety of
    his sentence........................................ 17

    B.   Whitley sentence is neither cruel, nor unusual,
    nor disproportionate............................... 17

CONCLUSION............................................. 18

CERTIFICATE OF SERVICE................................ 20

## TABLE OF AUTHORITIES

### Cases

Atchley v. State, 393 So. 2d 1034 (Ala. Crim.
  App. 1981).......................................... 9

Bush v. State, 523 So. 2d 538 (Ala. Cr. App. 1988)....... 11

Dumas v. State, 611 So. 2d 426 (Ala. Crim. App. 1992).... 18

Faircloth v. State, 471 So. 2d 485 (Ala. Crim.
  App. 1984).......................................... 17

Harmelin v. Michigan, 501 U. S. 957, 111 S. Ct.
  2680 (1991).......................................... 17

People v. Richards, 2002 WL 31483573 (Cal. App. 4th
  Dist. 2002).......................................... 13

People v. Rodriguez, 2001 WL 1531189 (Cal. App. 5th
  Dist. 2001).......................................... 13

Reittinger v. Com., 29 Va. App. 724, 514 S. E. 2d
  775 (Va. App. 1999).................................. 9

Smith v. State, 795 So. 2d 788 (Ala. Crim. App. 2000).... 11

State v. Murray, 733 So. 2d 945 (Ala. Crim. App. 1999).... 9

State v. Slovik, 71 P. 3d 159, 188. Or. App. 263 (2003).. 14

State v. Swader, 137 Idaho 733, 52 P. 3d 878 (Ct. App.
  2002) ............................................... 15

Williams v. State, 716 So. 2d 753 (Ala. Crim. App. 1998).. 8

Wilson v. State, 830 So. 2d 765 (Ala. Crim. App. 2001)... 18

**Statutes**

ALA. CODE (1975),

  Section 13A-12-231(7) .................................. 15

  Section 13A-12-231(7)c .................................. 12

## STATEMENT OF THE CASE

This is an appeal by Jerry E. Whitley ("Whitley") from his convictions in Russell County Circuit Court on charges of trafficking in methamphetamine, possession of methamphetamine, use of a firearm in a drug trafficking offense, and resisting arrest. Russell County Circuit Court Judge George R. Greene presided over Whitley's trial.

On January 16, 2002, Whitley was indicted for trafficking in methamphetamine in violation of ALA. CODE, Section 13A-12-231 (1975), possession of methamphetamine in violation of ALA. CODE, Section 13A-12-212 (1975), use of a firearm in a drug trafficking offense as proscribed by ALA. R. CRIM. P. Rule 14.4, and resisting arrest in violation of ALA. CODE, Section 13A-10-41 (1975).  (C. 13-14; 209-210; 376-377) On February 20, 2002, Whitley waived formal arraignment and entered pleas of not guilty.  (C. 17; 214; 381)

On June 13, 2002, Whitley filed a *Motion to Suppress* the State's drug evidence, on the grounds the evidence was seized illegally by the officers of the multi-jurisdictional Metro Drug Task Force who were responsible for his arrest.  (C. 45-48; 241-244; 407-410) A hearing on

Whitley's *Motion to Suppress* was held on August 26, 2002. (R. 4-77) At the conclusion of the hearing, Whitley's *Motion to Suppress* was denied.  (R. 76-77)

On December 5, 2002, a jury was struck in the case of State of Alabama vs. Jerry E. Whitley, CC 02-186, 187, 188 (Russell County Circuit Court), and Whitley's trial commenced.  (R. 79) At the conclusion of the evidence, the jury returned its verdict, finding Whitley guilty of trafficking in methamphetamine, possession of methamphetamine, use of a firearm in a drug trafficking offense, and resisting arrest, all as charged in the State's indictment.  (R. 268-269)

A sentencing hearing was held on January 14, 2003, at which time Whitley was sentenced to a term of thirty-five years imprisonment for the trafficking conviction, run concurrently with a five-year term for the methamphetamine possession conviction, to be followed by a consecutive six-month term of incarceration for the resisting arrest conviction.  (R. 275-276)

Whitley was also ordered to pay a $50,000 fine, $600 in Alabama Crime Victim's Compensation Fund assessments, $2,000 in Alabama Drug Demand Reduction Act assessments, a

2

$100 Alabama Forensic Sciences Trust Fund fee, court costs, and attorneys' fees.[1] (R. 274-276) Finally, Whitley was ordered to complete the Alabama Department of Correction's substance abuse program, and his Alabama driver's license was suspended for a period of six-months. (R. 275-276)

On January 14, 2003, Whitley filed written notice of appeal. (C. 179-180; 336-337; 494-495) This appeal ensued.

## ISSUES PRESENTED FOR REVIEW

1. Was the trial court correct in denying Whitley's *Motion to Suppress* the State's drug evidence?

2. Did the trial court err in denying the motions filed by Whitley that would have allowed him to offer the live testimony of a defense forensic expert?

3. Was the State's evidence sufficient?

4. Does Whitley's sentence of thirty-five years imprisonment on the methamphetamine trafficking charge constitute unconstitutionally cruel and unusual punishment?

---

[1] It also appears that Whitley was ordered to begin paying an incarceration fee of $10 per day once he was in the Russell County jail serving his six-month sentence for resisting arrest. (R. 276)

3

## STATEMENT OF THE FACTS

On September 21, 2001, Sgt. Jim Price of the Metro Narcotics Task Force in Russell County received information from a confidential informant to the effect that Jerry Whitley had a methamphetamine laboratory set up in a mobile home located in the Rusk Trailer Park in Phenix City.  (R. 117-120) The informant also said that Whitley's trailer/lab was booby-trapped.  (R. 121)

Three officers of the Metro Task Force proceeded to place Whitley's trailer under surveillance.  (R. 122-123) When an individual named Steve Moseson exited the trailer, the agents approached him.  (R. 123) A pat-down search of Moseson produced a small package of methamphetamine.  (R. 125)

After Moseson was arrested for possession of methamphetamine, the agents knocked on the door of the trailer.  (R. 125) Whitley answered the door with a large wrench in his front pocket.  (R. 127) When, for their own protection, the agents removed the wrench from Whitley's pocket, a small package of methamphetamine fell from Whitley's pocket onto the ground, in plain view.  (R. 127-128)

Once the agents began to place him under arrest for possession of the methamphetamine that had fallen out of his pocket, Whitley began yelling for someone inside the trailer to ". . . blow it up, set it off . . .". (R. 128-129) Fearing that someone inside the trailer was about to set off the booby-trap the agents had been warned of by the informant, Agents Whitten and Memo rushed inside the trailer, where, in addition to two individuals, they found all the apparatus necessary for manufacturing methamphetamine. (R. 128-130)

After securing Moseson, Whitley, and the two other persons from inside the trailer, the agents obtained a search warrant. (R. 130) Pursuant to the search warrant, the agents seized the methamphetamine apparatus they had seen in the trailer, a large quantity of methamphetamine, and a number of firearms. (R. 131) Whitley was subsequently charged with trafficking in methamphetamine, possession of methamphetamine, use of a firearm in a drug trafficking offense, and resisting arrest.

5

## STANDARD OF REVIEW

1.    The standard of review of the sufficiency of evidence is whether evidence existed at the time the motion for acquittal was made from which the jury could by fair inference find the defendant guilty.  Parris v. State, 2002 WL 31628779, at *6 (Ala. Crim. App. 2002). The question for the jury is whether it can reasonably find that the evidence in question excludes every reasonable hypothesis *except* that of guilt.  Fitch v. State, 2001 WL 996293, at *25 (Ala. Crim. App. Aug. 31, 2001).

2.    The question of whether a police officer's warrantless entry into a defendant's home is justified by exigent circumstances is a mixed question of constitutional fact that an appellate court reviews under two different standards: 1) the trial court's findings of evidentiary or historical fact will not be overturned unless they are clearly erroneous; however, 2) the appellate court independently determines whether the historical or evidentiary facts establish exigent circumstances sufficient to satisfy the warrantless entry.  State v. Kryzaniak, 241 Wis. 2d 358, 624 N. W. 2d 389 (Wis. App. 2001).

3.   The standard of appellate review of a claim of cruel, unusual, and disproportionate sentence is abuse of discretion.  <u>Jolly v. State</u>, 2002 WL 31628700, at *10  (Ala. Crim. App. 2002).

## SUMMARY OF ARGUMENT

Possession of a controlled substance in plain view of police officers at his front door allowed Whitley to be arrested for possession of methamphetamine. Exigent circumstances relating to the possible imminent destruction of evidence allowed the officers to enter Whitley's trailer without a search warrant. Observing methamphetamine and methamphetamine manufacturing apparatus inside the trailer, in plain view, provided the probable cause for a search warrant for Whitley's trailer.

Possession of a mixture of methamphetamine, even if it is in a form that is not ready for human consumption, is the act prescribed by the Alabama drug trafficking statute. Finally, a thirty-five year sentence for a serious crime like possession, for sale, of four pounds of methamphetamine, is not constitutionally disproportionate.

**ARGUMENTS**

I.  **The trial court was correct in denying Whitley's**
    ***Motion to Suppress*** **the State's drug evidence.**

Whitley argument here is that the entry of his trailer,
and the seizure of the methamphetamine from inside it, was
illegal, because the Drug Task Force agents had neither a
search warrant, nor exigent circumstances, to support their
entry of the trailer. Not so. While the agents may not have
had a search warrant at the time of their initial entry
into the trailer, exigent circumstances *were*, in fact,
present.

A.  **At the time they confronted Whitley**
    **at the door of his trailer, the Task**
    **Force agents were engaged in mere**
    **questioning of Whitley, an activity**
    **that required neither reasonable**
    **suspicion, nor probable cause.**

A seizure does not occur when police simply approach a
person and begin to ask questions. See Williams v. State, 716
So. 2d 753, 754 (Ala. Crim. App. 1998).  The presence of
police officers, together with the limited request for
information, does not amount to the kind of "show of
authority" that would lead a reasonable person to conclude he
was not free to go and, therefore, under arrest.  State v.

8

Murray, 733 So. 2d 945, 950 (Ala. Crim. App. 1999), citing Atchley v. State, 393 So. 2d 1034, 1040-44 (Ala. Crim. App. 1981).

The presence of narcotics agents at Whitley's front door required neither reasonable suspicion, nor probable cause. Anything the agents saw from their vantage point outside Whitley's front door was something they were completely within their rights in seeing.

> **B. For their own safety, the agents at Whitley's front door had a right to remove the wrench from his pocket, even though they may not have had reasonable suspicion to believe he was, at that time, involved in a criminal activity.**

Before protecting himself with a frisk for weapons, it is not necessary for an officer's interest in a person to have first risen to the level of *reasonable suspicion* -- an officer may conduct a protective pat down during mere questioning. *See* Reittinger v. Com., 29 Va. App. 724, 732, 514 S. E. 2d 775, 779 (Va. App. 1999). Because of this, when Whitley answered his trailer door with a foot-and-a-half long metal wrench in his front pocket, in order for them to be able to question Whitley in safety the officers were well

within their rights in removing it from him. The fact that,
when they did, a package of methamphetamine fell out of
Whitley's pocket, and onto the ground in plain view, is
simply a strange twist of fate, not officer overreaching.
(R. 127)


        **C. When, while being arrested for**
            **possession of methamphetamine outside**
            **his trailer, Whitley began yelling for**
            **someone inside the trailer to "blow it**
            **up", an exigent circumstance allowing**
            **the agents outside the trailer to go**
            **inside was created.**


As he was being arrested for the methamphetamine that
fell out of his pocket in front of the officers, Whitley
began to struggle, and to yell back inside the trailer for
someone to "blow it up".  (R. 128-129) In the light of the
fact that the officers had already been told by their
informant that the trailer/lab was booby-trapped, Whitley's
entreaty for someone back inside the trailer to blow it --
and, presumably, themselves - up, provided the officers
with the exigent circumstances of -- (1) potential
destruction of evidence, and (2) potential endangerment of
the officers, the suspects, and the public -- so as to
allow them to immediately enter Whitley's trailer without a

search warrant.  *See* <u>Smith v. State</u>, 795 So. 2d 788, 807-
808 (Ala. Crim. App. 2000), *citing* <u>Bush v. State</u>, 523 So.
2d 538 (Ala. Cr. App. 1988).

> **D. Seizure of evidence, pursuant to a
> search warrant obtained on the basis
> of information obtained during an
> exigent circumstance entry of
> Whitley's trailer, is legal.**

Once inside his trailer, the officers saw, in plain

view, Whitley's methamphetamine lab. Notwithstanding this,

however, the agents left, and secured a search warrant,

before seizing the laboratory apparatus, and all its

methamphetamine product. Based on the unique circumstances

surrounding this incident, the agents had clear probable

cause for the warrant, and the search and seizure were

completely legal.

**II. The trial court did not err in denying the motions
filed by Whitley that would have allowed him to
offer the live testimony of a defense forensic
expert evidence.**

Throughout the preparation of his case, Whitley sought

to challenge the State's allegation that the liquid

11

substance seized from his trailer was in excess of a kilo of a "mixture" of methamphetamine as defined by ALA. CODE, Section 13A-12-231(7)c.(1975).  (C. 51-59; 61-62; 64-80; 97-98; 104-113; 115-116; 118-121; 125-138; 155) Ultimately, the trial court denied Whitley's *Motion to Continue* his trial in order for arrangements to be made to have an expert from Nevada fly in to give his opinion that the solution seized from Whitley's trailer actually contained *less* than 28 grams of pure methamphetamine.  (C. 125-127; 138; R. 83-93) The trial court did, however, allow a report from the expert, stating his opinion, to be introduced into the evidence.  (R. 90-93)

It was, and is, the position of Whitley, and his expert, that, were one to completely distill the liquid substances represented by State's *Exhibits 1* through *15*, a combined total of less than 28 grams of *pure* methamphetamine would result, and that, therefore, his defense was severely compromised when the trial court failed to allow his expert to be present and testify. Not so.

Irrespective of whether Whitley's *Motion to Continue* should or should not have been granted, the basis for

Whitley's position that the amount of methamphetamine contained in the liquid solution seized from him defense was inadequate is not scientifically grounded.

Hydrochloric acid *is* one of the precursor[2] chemicals for methamphetamine that, when combined with other chemicals, creates methamphetamine. See People v. Rodriguez, 2001 WL 1531189, at *6 (Cal. App. 5th Dist. 2001) Muriatic acid is also used. See, e.g., People v. Richards, 2002 WL 31483573, at *2 (Cal. App. 4th Dist. 2002). In addition to muriatic acid and hydroiodic acid (iodine and red phosphorous), the chemical process for the production of methamphetamine also utilizes ephedrine and ether.

Muriatic acid is used to create the free-base form of the drug. *Vogt*. Hydrochloric acid is necessary, at the end of the production process, to convert this free base methamphetamine into the hydrochloride (salt, or powder)

---

[2] Methamphetamine is "cooked" in clandestine labs, usually over a hot plate or kitchen stove, using a combination of reagents, solvents, and precursors. *See* Vogt, Anna S., *The Mess Left Behind: Regulating The Cleanup Of Former Methamphetamine Laboratories*, 38 Idaho L. Rev. 251, 255 (2001).

form of the methamphetamine[3] used by methamphetamine abusers.

Though methamphetamine abusers do not user the free base form of the methamphetamine, free base methamphetamine is, nevertheless, methamphetamine, only in liquid form. The liquids recovered from Whitley's trailer was this free-base form of methamphetamine, in solution, some 2000-odd grams[4] of it.

The question of whether the a quantity of a substance like the liquid methamphetamine seized from Whitley has to be useable, or "marketable", in order to be considered controlled, is one that has been addressed by various courts. Two camps have developed:  1) the "marketable solution" camp, represented by Oregon; and, 2) the "plain language" camp, represented by Idaho.

In State v. Slovik, 71 P. 3d 159, 165, 188. Or. App. 263, 275 (2003), the Oregon Court of Appeals held that the legislative history of the act creating Oregon's drug

---

[3] A solvent such as freon is added to trap the free-base methamphetamine in solution, which settles to the bottom of the container. The solution is removed and then mixed with hydrochloric gas. The resulting yellow substance, nicknamed "snot," is strained through a sheet, leaving methamphetamine hydrochloride (methamphetamine powder) on the sheet. A press is used to squeeze the remaining liquid from the methamphetamine.  *Rodriguez.*

[4] Ordinarily, the top, organic layer of the bi-layered, free-base methamphetamine solution is considered to be waste, i.e., not for human consumption. *Vogt.*

14

trafficking law demonstrated that the Oregon legislature intended to model its drug trafficking law after federal drug trafficking law, and that federal drug trafficking law required a drug mixture to be in a "marketable" form in order for it to qualify for treatment under the federal trafficking law. Conversely, in State v. Swader, 137 Idaho 733, 52 P. 3d 878, 884 (Ct. App. 2002), the Idaho Court of Appeals held that the plain language of the Idaho drug trafficking statute contained no limitation that any drug "mixture" proscribed by its terms be in a readily "street-marketable" form, and refused to so engraft one.

Like Idaho's statute, the plain language of ALA. CODE, Section 13A-12-231(7)(1975) prohibits "any mixture" of methamphetamine of between one and ten kilos in weight. There is no requirement that the mixture be in a street-ready, marketable form. Like Idaho's Court of Appeals, this court should be reticent to graft on such a requirement.

### III. The State's evidence was sufficient to support Whitley's convictions for possession of methamphetamine, and resisting arrest.

Whitley argues that small package of methamphetamine that fell out of his pocket was fruit of the poisonous

15

tree, and that, because the State had no right to arrest him for possession of it, he was within his rights in resisting what, to him, was an illegal arrest.

For the reasons stated in *Argument I*, *infra.*, however, the State has explained how the methamphetamine was observed in Whitley's possession, in plain view, as the result of a legitimate pat-down for a weapon. Because the Narcotics Task Force officers had a right to remove the wrench from Whitley's pocket while they spoke to him, the fact that the methamphetamine was revealed through the process of removing the wrench does not render the seizure of the methamphetamine illegal.

Because the seizure of methamphetamine from Whitley was legal, Whitley's arrest for possession of methamphetamine was legal, and Whitley's attempt to resist that arrest was illegal. The State's evidence in support of Whitley's convictions, for possession of methamphetamine and resisting arrest, was sufficient.

**IV. Whitley's sentence of thirty-five years imprisonment for methamphetamine trafficking does not constitute unconstitutionally cruel, unusual, and/or disproportionate.**

Finally, Whitley argues that his sentence of thirty-five years imprisonment for drug trafficking is constitutionally excessive. This argument is also due to fail.

**A. Whitley failed to preserve for appellate review any claim relating to he constitutional propriety of his sentence.**

In order to preserve a question concerning the constitutional propriety of a sentence, the issue must be raised and presented in the trial court, like any other constitutional claim. Faircloth v. State, 471 So. 2d 485, 493 (Ala. Crim. App. 1984). Because Whitley failed to do this, the issue is not properly before this Court.

**B. Whitley sentence is neither cruel, nor unusual, nor disproportionate.**

Even had Whitley preserved his claim concerning the constitutionality of his sentence, it would be without merit. Under Harmelin v. Michigan, 501 U. S. 957, 962, 111 S. Ct. 2680, 2683 (1991), factors such as -- 1) the

17

circumstances of the crime, 2) the harm caused to the victim or to society, 3) the culpability of the offender, and 4) the offender's motive in committing the crime -- go into determining whether a particular sentence is grossly disproportionate.  *See* Wilson v. State, 830 So. 2d 765, 778 (Ala. Crim. App. 2001), *citing* Dumas v. State, 611 So. 2d 426 (Ala. Crim. App. 1992).

Here, Whitley's crime was a serious one that could have had a devastating effect on both the community at large -- and on the drug abusers in particular[5] -- with whom Whitley came in contact. A thirty-five year sentence for such a crime is not disproportionate. Because the punishment was not disproportionate to Whitley's crime, neither was it cruel.

### CONCLUSION

For the reasons shown, Whitley's convictions and sentences on charges of trafficking in methamphetamine, possession of methamphetamine, use of a firearm in a drug

---

[5] In fact, State's Exhibit 32 is a letter from Steve Moseson -- the first guy arrested coming out of Whitley's trailer on September 21, 2001 -- referencing his struggle with methamphetamine addiction.  (C. 546)

trafficking offense, and resisting arrest, are all due to be affirmed.

> Respectfully submitted,
>
> William H. Pryor Jr.
> *Attorney General*
> By-
>
> Stephen N. Dodd
> *Assistant Attorney General*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2003, I served a copy of the foregoing on the attorney for the Appellant, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

J. Michael Williams
P. O. Box 1068
Auburn, AL  36831-1068


STEPHEN N. DODD
ASSISTANT ATTORNEY GENERAL


ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, AL  36130
(334) 242-7300


116714/49788-001