Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555



Dodd
49788

H.W. "BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-02-0739                    Russell Circuit Court CC-02-186;
                                        CC-02-187; CC-02-188

Jerry E. Whitley v. State of Alabama

WISE, Judge.

The appellant, Jerry E. Whitley, was convicted of trafficking in methamphetamine, a violation of § 13A-12-231, Ala. Code 1975, possession of methamphetamine, a violation of § 13A-12-212, Ala. Code 1975 and resisting arrest, a violation of § 13A-10-41, Ala. Code 1975. Whitley was sentenced to 35 years' imprisonment for the trafficking conviction and 5 years' imprisonment for the possession conviction; the sentences to run concurrently. Whitley was also sentenced to 6 months' imprisonment for the resisting arrest conviction, the sentence to be served consecutively with the trafficking and possession convictions. In addition, Whitley was ordered

1



to pay a $50,000 fine, $600 in assessments to the Alabama Crime Victim's Compensation Fund, $2,000 in Alabama Drug Demand Reduction Act assessments, a $100 assessment to the Alabama Forensic Sciences Trust Fund, court costs, and attorneys fees. Whitley was further ordered to complete the Alabama Department of Corrections substance abuse program and his Alabama Driver's License was suspended for six months.

The evidence at trial tended to establish that on September 21, 2001, Jason Whitten of the Phenix City Police Department, received information from a confidential informant ("C.I.")[1] that Jerry Whitley operated a methamphetamine laboratory in a mobile home located within the Rusk Trailer Park. Additionally, Price was warned that the mobile home was booby-trapped. As a result of the information received from the CI, agents Price, Whitten and Memmo went to the Rusk Trailer Park trying to locate the trailer in question. Price testified that the agents went to the location to determine whether "there was any activity at the trailer and see if we could smell a chemical smell, based on the informant's information. If the meth lab was running, we should smell chemicals." (Vol. 3 - R. 8.) Approximately 15 minutes after setting up surveillance, the agents observed Steve Moseson exit the trailer. The agents, wearing Metro Narcotics gear, approached Moseson, who had a shaken look on his face and a chemical smell on his person. A pat-down search of Moseson, done for officer safety, produced a package of methamphetamine.

Following Moseson's arrest, agents Price and Whitten knocked on the door of the mobile home. Caylene White

---

[1] Whitten, who was also assigned to the Metro Narcotics Task Force, received information about a methamphetamine lab in Rusk Trailer Park in Phenix City from Sergeant Lawrence, also of the Phenix City Police Department. Lawrence turned over to Whitten. The C.I. informed Whitten that the lab was three-quarters of the way down Rusk Drive on the left and described the awning on the trailer and the vehicles that were parked in the driveway. The C.I. then informed Whitten that the person occupying the trailer was Jerry Whitley and that they were cooking methamphetamine that day. This conversation took place between noon and 2 p.m. that afternoon. (R. 32).

answered the door and agent Price asked to speak with Whitley. Agent Price testified that he noticed the strong odor of ether, a chemical agent commonly associated with the production of methamphetamine, emanating from the mobile home. Whitley came to the door and Price asked him to step outside. Price noticed that Whitley appeared very nervous and had a large wrench in his front pocket. For his own protection, Price removed the wrench and in doing so, a package of methamphetamine fell from Whitley's pocket to the ground. Whitley turned towards the mobile home and yelled "set it off, blow it up. Caylene, you know what to do." (Vol. 3 R. 14.) Upon hearing this, agent Whitten entered the mobile home and removed White. Whitley then yelled "Wayne, set it off. Wayne, blow it up. You know what you got to do. Wayne, do it." Agents Whitten and Memmo, having been previously warned that the mobile home was rigged and fearing that an explosive might be ignited, entered the mobile home and apprehended Wayne Meadows. While in the mobile home, agents observed all the required components to manufacture methamphetamine. Moseson, White, Meadows and Whitley were placed in police vehicles and a search warrant was obtained.

Pursuant to the search warrant, a large apparatus used to manufacture methamphetamine was seized, along with a large quantity of methamphetamine and several firearms. Whitley was later charged with trafficking in methamphetamine, possession of methamphetamine, use of a firearm in a drug trafficking offense and resisting arrest. On February 20, 2002, Whitley waived formal arraignment and entered a plea of not guilty to all counts. On June 13, 2002, Whitley filed a motion to suppress the evidence that he said was illegally seized from the mobile home. On December 5, 2002, a jury was struck and after the presentation of the evidence, the jury found Whitley guilty on all counts.

On appeal, Whitley argues that: (1) the trial court erred in not granting his motion to suppress; (2) the trial court erred in not allowing the testimony of Dr. Hiatt concerning the amount of methamphetamine in the liquid mixtures; (3) there was insufficient evidence to support convictions for possession of methamphetamine and resisting arrest; and (4) 35 years' imprisonment for trafficking is cruel and unusual punishment.

I.

Whitley first argues that the trial court erred in denying his motion to suppress the evidence seized from the search, because, he claims, the narcotics agents had neither a search warrant nor exigent circumstances to support their entry into the mobile home.

"[A] principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment [to the Unites States Constitution] on agents of the government who seek to enter the home for purposes of search or arrest." Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2D. 732 (1984).

> "It is well settled that warrantless entries to and search of a residence are presumptively unreasonable and the burden is on the government to demonstrate exigent circumstances justifying a warrantless entry and search. Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2D. 732 (1984). To justify a warrantless entry and search, the state needs to show both the existence of probable cause and exigent circumstances. United States v. Rodgers, 924 F.2d 219 (11th Cir. 1991), cert. denied, 501 U.S. 1221, 111 S.Ct. 2834, 115 L.Ed2d 1003 (1991), appeal after remand, 981 F.2d 497 (11th Cir. 1993); Etheridge v. State, 414 So. 2d 157 (Ala. Crim. App. 1982)."

A.A.G. v. State, 668 So. 2d 122, 126 (Ala. Crim. App. 1995)(some internal citations altered). "The establishment of probable cause requires only facts available to the officer at the moment of [entry] would warrant a person of reasonable caution to believe that the action taken by the officer was appropriate." A.A.G., 668 So. 2d at 127.

Here, the evidence presented at the suppression hearing established that narcotics agents, after finding methamphetamine on an individual leaving the mobile home, knocked on Whitley's door. When the door to the mobile home

4

opened, Agent Price noticed the strong smell of ether, a chemical commonly used in the production of methamphetamine. Agent Price asked Whitley, who appeared nervous and excited, to step outside of the mobile home to speak with him. It is important to note that Price was not attempting to arrest Whitley at this time, rather he simply requested that Whitley step outside so that he could ask him some questions. See Williams v. State, 716 So. 2d 753, 754 (Ala. Crim. App. 1989)(A seizure does not occur when [a narcotics agent] approaches a person and begins to ask questions.) Upon his exit, Price noticed a large foot-long wrench in Whitley's pocket. Fearing that the wrench could be used as a weapon, Price removed the wrench and in so doing a packet of methamphetamine fell out of Whitley's pocket. Whitley then began to yell for the occupants inside the mobile home to "set it off," and "blow it up." Having been previously warned that the mobile home was bobby-trapped, agents Whitten and Memmo entered the residence in order to prevent the occupants from setting off any type of explosion.

The State bears the burden of proving the existence of an exigent circumstance to overcome the presumption of unreasonableness that attaches to warrantless entries and searches. McCammon v. State, 499 So. 2d 811 (Ala. Crim. App. 1986). In Bush v. State, 523 So. 2d 538 (Ala.Crim.App. 1988), this Court set forth the following as factors that may indicate the existence of exigent circumstances:

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public; and (6) the peaceful circumstances of the entry."

Taking all the surrounding circumstances into consideration, Agents Whitten and Memmo could have reasonably concluded that Whitley's directions to "set it off," provided the potential for destruction of evidence or, as the State correctly points, the potential risk of danger to the agents, the suspects and

5

the residents of the surrounding mobile homes if the home was, as the agents had been warned, booby-trapped. Accordingly, there existed exigent circumstance that, when coupled with probable cause, justified the warrantless entry of the premises. Moreover, we note that the seizure of evidence from inside the mobile home occurred only after a search warrant had been obtained. In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court. Kennedy v. State, 640 So. 2d 22, 26 (Ala.Crim.App. 1993), quoting Bradley v. State, 494 So. 2d 750, 761 (Ala.Crim.App. 1985), aff'd 494 So. 2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). A trial court's ruling on a motion to suppress will not be disturbed unless it is palpably contrary to the great weight of the evidence. Parker v. State, 587 So. 2d 1072, 1088 (Ala.Crim.App. 1991).

II.

Whitley next argues that the trial court erred in denying motions filed by Whitley that would have allowed him to offer the live testimony of a forensic expert who would testify that the solution seized from Whitley's laboratory contained less than 28 grams of methamphetamine. Specifically, this expert's testimony was proffered to show that less than 28 grams of a marketable solution, "street ready" form of methamphetamine was seized from Whitley's mobile home.[2] Section 13A-12-231(7), Ala. Code 1975 states:

> Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of 5-methoxy-3, 4-methylenedioxy amphetamine, or of any mixture containing 5-methoxy-3, 4-methylenedioxy amphetamine is guilty of a felony, which felony should be known as "trafficking in illegal drugs"...

---

[2] It is important to note that the trial court did, in fact, allow a report from this expert to be admitted into evidence.

6

§ 13A-12-231(7), Ala. Code 1975. (emphasis added). "If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intention of the Legislature must be given effect. Ex parte Looney, 797 So. 2d 427, 428 (Ala. 2001). The language of § 13A-12-231(7), Ala. Code 1975 is clear that *"any mixture containing 5-methoxy-3, 4-methylenedioxy amphetamine"* seized satisfies the requirement of § 13A-12-231, Ala. Code 1975. Agents recovered 2000-plus grams of the liquid, free-base form of methamphetamine. As a result, the trial court did not abuse his discretion in denying Whitley's motion.

### III.

Whitley's next argues that there was insufficient evidence to support his convictions for possession of methamphetamine and resisting arrest. Specifically, Whitley argues the methamphetamine that fell from his pocket was fruit of the poisonous tree and, thus, he was within his rights to resist an unlawful arrest. Whitley has not argued this issue as required by Rule 28(a)(1), Ala. R. App. P. Because he has failed to present this Court with any authority for the issue raised, he is deemed to waived it on appeal. Hart v. State, 852 So. 2d 839, 848 (Ala. Crim. App. 2002).

Moreover, Agent Price had legitimate authority to remove the wrench -- a potential weapon -- from Whitley's pocket. The fact that a package of methamphetamine fell out during the removal of the wrench does not render the seizure of the methamphetamine illegal. Because the arrest for possession of methamphetamine was lawful, Whitley's attempt to resist resulted in a charge of resisting arrest.

### IV.

Finally, Whitley argues that his sentence of 35 years' imprisonment constitutes cruel and unusual punishment. Section 13A-12-231, Ala. Code 1975 provides that trafficking in methamphetamine is a Class A felony. Section 13A-5-6, Ala. Code 1975 provides that the range of punishment for a Class A felony is "...for life or not more than 99 years or less than 10 years." Because of the seriousness of the offense and the fact that Whitley's sentence is well within the range of punishment proscribed by §§ 13A-12-231 and 13A-5-6 Ala. Code

1975, we do not find his sentence to be cruel or unusual.

Based on the foregoing, the judgment of the trial court is affirmed.

**AFFIRMED.**

McMillan, P.J., and Cobb and Shaw, JJ., concur. Baschab, J., concurs in the result.