IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

2005 SEP 19  A 10: 06

| | | |
|---|---|---|
| Jerry Eugene Whitley, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| vs. | * | Civil Action No. 3:05 CV-427-F |
| | * | |
| J.C. Giles, Warden, et. al., | * | |
| | * | |
| Respondent(s) | * | |
| | * | |

## PETITIONER'S RESPONSE

Respondents filed an answer to Petitioner's Habeaus Corpus Petition on July 12, 2005.

In the State's Answer Respondents deny that Petitioner has exhausted state court remedies for the issue raised of Petitioner's arrest being illegal under the heading of illegal arrest.

ISSUE III of Appellate Brief to the Court of Criminal Appeals reads as follows:

> ISSUE III: There was insufficient legal evidence to support convictions for Possession of Methamphetamine and Resisting Arrest.

Petitioner avers that the State's allegation on this issue is not only improper but false.

In support of Petitioner's Averment Petitioner shows as follows:

At Suppression Hearing and upon motion to the court trial attorney properly raised the issue of Petitioner's arrest being illegal and uncon-stitutional. There was no warrant for Petitioner or his residence.

Trial attorney also objected to any evidence that the arrest had under the circumstances uncovered be suppressed.

The trial court denied the Motion to Suppress and trial attorney was granted a continuing objection for any future proceedings, for any evidence that was uncovered from the Petitioner's arrest.

This objection by trial attorney is proper remedy of preservation for appellate review.

The Court of Criminal Appeals completely evaded the issues raised properly in brief to the court. The court stated in it's opinion that counsel failed to follow rules that the court specifically observed as Rule 28(a)(1), which reads as follows:

> Alabama Rules of Appellate Procedure
> (a) Brief of Appellant. The brief to the court shall contain under appropriate headings and in the order here indicated.
>
> (1) Statement Regarding Oral Argument. A short statement indicating whether oral argument is desired and, if it is, the reasons why oral argument is requested. The cover of the brief shall state "Oral Argument Requested."

On the cover of the brief to the court oral argument was requested by appellant counsel, in accordance with the rules of the court, therefore, the reasoning of the court for failing to address the issue was improper.

Also issued by the Court of Criminal Appeals in the Opinion was that the appellant's counsel had failed to cite authority concerning the issue of the arrest, however, in the brief and the Application for Rehearing, counsel pointed to the fact that the issue was in fact simularly argued in ISSUE I of the original brief. Counsel cited the Fourth Amendment and all other cases related in ISSUE I, due to the fact that the arrest, search and seizure exigency and other facts related were basically one occurrence.

Attorney for Appellant is a seasoned veteran and was satisfied that the order of the argument in the brief was sufficient due to the facts and cir-cumstances of the police actions in the arrest and furthermore, the court should have accepted the argument for review.

-2-

Petitioner avers that the State failure to review the constitutional violations has denied Petitioner a proper appellate process and shows that the State of Alabama has gone to great lengths to avoid the issues of the seizure, arrest and search of the Petitioner and the residence.

The Petitioner is a layman not trained in law however, he realizes the most probable reasoning for appellate counsel arguing in the issues as he had was to alleviate recitation of ISSUE I of the brief to the Court of Criminal Appeals, as also had the States Office of Attorney General has taken the same exact approach on the issues being argued in reference to one another.  It should also be noted that the argument in ISSUE I is very extensive.

Therefore, Petitioner realizes and further avers the prejudice caused far outweighs the need for dismissal of the issue by the Court of Appeals and shows that the court was in error for the dismissal of the ISSUE III of the Appellant's Brief which is now ISSUE I of the Habeaus Petition.

The State is attempting to make a circular argument in that the seizure, arrest, and search where justified by the search, arrest and seizure of persons and residence.

Therefore, not only have the State courts failed to apply federal and constitutional law reasonably but have failed to address the issue of arrest at all.  Therefore, causing Petitioner to seek constitutional correctness from this Honorable Court.

Petitioner has also come to realize that any further proceedings in the state courts of Alabama involving these issues would in fact be meaningless and futile.  Petitioner also shows that the state courts have had four (4) separate opportunities to in fact properly review and reasonably apply federal law and Supreme Court precedent to the issues of the illegal actions involving this case as was properly raised by Petitioner at trial, direct appeal, application for rehearing and writ of certiorari.  Therefore, Habeaus Petition to this Honorable Court is correct vehicle for further appellate process by

-3-

Petitioner.

These premises considered, this Court should disregard the State's allegation that the Petitioner has failed to exhaust state remedies for the claim of unconstitutional illegal arrest and grant Petitioner's Writ of Habeaus Corpus.

Also, in the State's answer filed July 12, 2005, the State claims that the Petitioner is not entitled to relief on the claim of:

## GROUND TWO

II:  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

The State claims that this issue was properly reviewed on the merits by the Court of Criminal Appeals.

Petitioner, however, avers that this claim by the State is not true. Had the State properly reviewed the issue by applying proper authority on this issue, this case would have been reversed and remanded with instructions that the evidence in this case be suppressed.

The Court of Criminal Appeals relied upon **Bush v. State**, 523 So. 2d 538 (1988), which arrives out of a complete set of circumstances than that of Petitioner's. The court also relied on the case of **A.A.G. v State**, 668 So. 2d 122, 126, (1995), which has absolutely no bearing on Petitioner's case. The A.A.G. case evolved out of police being summoned to a residence where an alarm system had been activated. And, therefore, an immediate need for police to investigate and no warrant would be needed in that case. There the case would have no influence on police activities causing exigency to in fact circumvent the warrant requirement to search for drugs.

Petitioner was summoned to the door of his residence by police who knew two (2) weeks in advance they would find him and illegal activities and

-4-

upon contact they would seize everyone and everything, to preserve evidence.

There were several cars of police converging on the residence simultaneously and the fire department had already been placed on standby by what appears to have been a call placed from Lot 22 Rusk Drive by the State's Attorney in this case. See Attached records of 911 Dispatch and Affidavit in support. (Exhibit A).

This further substantiates Petitioner's claim the exigency was strategically preconceived and not coincidental.

## ARGUMENT OF ISSUES GROUNDS I AND II

The question of exigency, when present, and what or who actually caused the exigency to transpire has been properly presented to the state courts. However, they have not been addressed at any level, trial court, criminal appeals or the Alabama Supreme Court.

The State relied upon factors of exigency to negate the necessity of obtaining any type of warrant before the September 21, 2001, arrest of Petitioner of the raid on his residence.

Petitioner has maintained that any exigency that may have occurred was preconceived and caused by the police involved in the illegal raid of Petitioner's residence and evolved out of an illegal arrest of co-defendant on the Petitioner's private residence and the illegal seizure, arrest and search of Petitioner and other co-defendants.

Therefore, illegal arrest of Petitioner and search of residence that immediately followed were basically one occurrence. Therefore, Petitioner respectfully hereby submits the argument of issues and summary of facts in accordance while showing pertinent supporting authority to the seizure, arrest and search in regards to issues of Ground One and Two of the Habeaus Petition to this Honorable Court.

Argument of Issues for  Grounds I and II of Habeaus Petition:

## GROUND I:  UNCONSTITUTIONAL WARRANTLESS ARREST

## GROUND II:  UNCONSTITUTIONAL WARRANTLESS SEARCH AND SEIZURE

Police received information concerning Petitioner's activities two (2) weeks prior to the arrest and raid on Petitioner.  Then these same officers received virtually the same exact information again on  the day of the raid, some three (3) to five (5) hours earlier.  The fact that these agents seized, arrested and searched a co-defendant illegally and, subsequently Petitioner on the private premises should show the agent's intents, which was to search without any type of warrant.  The agents knew in advance that they would seize the Petitioner, his residence, and anyone or anything before going onto the property.  And the agents had adequate time to obtain a search warrant.  However, the agents did not make any attempt at obtaining any warrants at all.  Rather, they laid-in-wait to create an exigency.

**Coolidge v. New Hampshire**, 404 US 874, 30 L. Ed. 2d 120, 92 S Ct 26:

There is no exigent circumstance to justify the failure of police to obtain a warrant before seizure and searching when the police have advance knowledge of the existence and location of the evidence and ample opportunity for obtaining a warrant.  Therefore, the application of the basic rule of the Fourth Amendment requires that the facts of the warrantless seizure be suppressed.

These very highly trained drug investigators should have reasonably known their intentions to ring true, to in fact search without a warrant of any type.  The fact that co-defendant was seized, arrested and searched along with the Petitioner was quite simply a plan to cause exigency to come full circle.  In an effort to circumvent the warrant requirement.

-6-

The District Attorney's opening statement reads as follows:

On September 21, of last year 2001, Agent Jason Whitten, who is employed by the Phenix City Police Department and assigned to the Metro Narcotics Task Force, a unit which, as it implies, concentrates on drug offenses.

Jason received a call from a citizen, and he said "I want to give you some information." He said a guy named Jerry Whitley is running a meth lab in Rusk Trailer Park. This caller said "Look, I don't know the exact trailer number, but here's a description of some cars that are parked in front of it." And the caller said, "And oh, by the way, I think you need to know Whitley's got surveillance cameras, closed circuit television sur-veillance cameras set up so he can see outside the trailer. He's got a bunch of guns, and he's booby-trapped the trailer so he can blow it up if the police show up."

Therefore, these officers knew in advance two (2) weeks prior to September 21, 2001, that there was a very high probability of exigency upon their encroachment onto the premises.

Officers claim that they had been given reliable information on two (2) seperate occasions that upon going to the residence, that Petitioner would possibly destroy evidence, use weapons, or blow up the residence.

However, the record clearly reflects that Petitioner was cooperative with agents even though these agents immediately seized everyone upon contact.

It seems ironic to Petitioner that these agents, armed with the type of information that these agents have claimed they had, prior to the raid, would go to the residence, many different agents, "raid gear intact," "weapons drawn," surround the residence, after the Fire Department had been placed on standby, and arresting someone illegally on the Petitioner's private property, to simply ask questions.

-7-

Any officer with experience and reasonable thought process would know that these actions would cause exigency, if the possibility exists. **U.S. v. Moreno**, 701 F.2d 815 (9th Cir. 1983):

Indeed the possibility of destruction of evidence exists in every narcotic investigation.

In **U.S. v. Rico**, 51 F.3d 495 (5th Cir. 1995), the Fifth Circuit Court of Appeals identified a non-exhaustive list of factors that may be considered in determining as to whether exigent circumstances exist:

(1) The degree of urgency involved, and the amount of time necessary to obtain a warrant.

(2) Reasonable belief that contraband is about to be removed.

(3) The possibility of danger to police guarding the site.

(4) Information indicating that the possessors of the contraband are aware that the police are on their trail.

(5) The ready destructability of the contraband, and the knowledge that efforts to dispose of narcotics, and to escape are characteristic behavior of those involved in narcotics traffic.

At applying the factors there could be no determination that there was an exigency prior to agents illegal actions:

(1) There was no urgency involved before a warrant could have been easily obtained in minutes.

(2) There was no information that evidence was being removed.

(3) There was no danger to police guarding the site.

(4) There was no evidence that surveillance was detected.

(5) There was no evidence that anyone was going to flee or destroy evidence before a warrant could be obtained.

**U.S. v. blake** 632 F.2d 731 (9th Cir. 1980)

The term exigent circumstance refers to situations where inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.

-8-

**Roaden v. Kentucky**, 413 US 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796

Exigent circumstances are now or never situations where police must properly act to preserve evidence.

**Welsh v. Wisconsin**, 466 US 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091

No exigency is created simply because there is probable cause to believe a serious crime has been committed.

## U.S. v. Karo, 486 US 717

Drug suspects are no less entitled to that protection of the warrant requirement that those suspected of non-drug offenses.

**U.S. v. Rico**, 51 F.3d 295 5th Cir 1995)

Officers may not abandon a covert surveillance and rely on exigent circumstances to excuse a warrantless entry to conduct a protective sweep when there is no justification whatsoever.

**U.S. v. Thompson**. 700 F 2d 944 (5th Cir )

Police cannot rely on exigency of their own making.

Several cars of the agents parked at strategic locations around the residence then lay in wait for an opportunity to create an exigency. Agent Jason Whitten "the lead agent" stated under oath that they had arrived on the scene at approximately 1:00 p.m. See Page 32 of Transcript (Exhibit B1). This entire scenario was preconceived to in fact circumvent the warrant requirement.

After about ten (10) minutes of surveillance the agents noticed an individual exit the residence.

The agents converged on the front of the residence, exited their vehicles with "weapons drawn" "raid gear intact," forced the individual to the ground, on his knees, cuffed and searched him while on Petitioner's private property. See Pages 64-65 of Transcript (Exhibit B2).

-9-

These agents stated that they had seen on one in violation of any laws at suppression hearing and trial.

Upon searching this individual that had been illegally seized on the Petitioner's property agents discovered a small packet of methamphetamine in his pocket obviously mistaken for a deadly weapon.

The agents then placed him out of the way and tactically surrounded the residence. Agent Memmo proceded to the rear of the residence and Agent Price went to the front door, "weapons drawn," "raid gear intact," and knocked and announced "Police, open up."

Upon this authoritative verbal command a female co-defendant opened the door to the residence, to find Agent Price with his weapon pointed directly at her. Agent Price then asked her where the Petitioner was and she yelled towards the rear of the residence for the Petitioner. Agent Price then physically removed her from the residence, along with Agent Whitten, who cuffed her and searched her, then placed her along with the other previously illegally seized co-defendant out of the way. See Page 54 of Transcrip (Exhibit B3).

Petitioner having overheard the knock and command of Agent Price, was then approached by another co-defendant who informed Petitioner that "Police are at the door and surrounding the residence."

### U.S. v. Munoz-Guerra, 788 F.2d 295 (5th Cir. 1986)

The court held that officers responding to several tips had placed a residence under surveillance.

After noticing some marijuana in plain view through a window the officers knocked at the patio door, one of the occupants motioned through the door that he had a key.

Fearing that he was in fact going to get a gun, the officers broke through the door and arrested the occupants.

The court held that there was no justification for approaching the suspects without a warrant, because the police surveillance was undetected. Consequently, the officers could have secured the condominium covertly from the outside and delayed their actions until they obtained a warrant.  Instead, a warrantless entry became a foregone conclusion once the officers knocked.

Petitioner proceeded to the front of the residence and noticed through a hallway window an agent at the rear of the residence with his weapon drawn and pointed directly at the rear doorway of the residence.  Upon Petitioners arrival at the front door of the residence he saw Agent Price standing at the door with his weapon drawn and pointed directly at the Petitioner's face and head.

Petitioner had known Agent Price for over twenty (20) years; asked "What's up, Jim?"  Agent Price then explained to Petitioner that they were going to search the residence.  Petitioner asked to be supplied with a copy of the search warrant and was then informed that no warrant was needed.  Agent Price then grabbed the Petitioner by the arms and slammed him to the ground, cuffed and searched him.

**U.S. v. Mendenhall, 446 US 544, 64 L.Ed.2d 497, 100 S. Ct. 1870**

(quoting **Terry v. Ohio**)

A person has been seized within the meaning of the Fourth Amendment, only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.

Examples of circumstances that might indicate a seizure, even when a person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the tone of voice or use of language that compliance might be compelled.

Therefore if this is the terms that identify a seizure Petitioner respectfully suggests that all co-defendants and himself had been seized by these agents due to the fact that it would have been impossible to no cooperate with these officers and no one certainly could have been free to leave.  In fact, all co-defendants and Petitioner were in fear of imminent death from these officers actions and presence.

**U.S. v. Johnson**, 457 US 537, 73 L.Ed.2d 202, 102 S. Ct. 2579

The Supreme Court held that a warrantless doorway arrest was unlawful where the defendant submitted upon being confronted by several officers brandishing their weapons.  Citing that this type of arrest is invalid under **Payton v. New York**, 445 US 573.

**U.S. v. Killebrew**, 560 F2d 733 (6th Cir  1977)

The time for exigency to excuse the warrant requirement is not when the arrest is made but at the time police come onto the premises.

The agents then fictitiously claim that after the seizure, arrest and search of Petitioner that Petitioner began to scream for someone inside the residence to burn down or blow up the residence.  For fear of their own safety agents entered the residence for the purpose of securing the scene, to check for others inside, and to preserve evidence.

Upon entering the residence agents discovered another co-defendant laying on the floor in the living area, arrested and searched him.

In **Lynch** the court explained that while courts have cataloged several situations in which exigent circumstances exist, it is clear that the exception must be applied carefully to each factual scenario.  **U.S. v. Blasco**, 702 F.2d 1315.

Recognized exceptions include danger of flight or escape, danger of harm to police or general public, risk of loss or destruction, removal or concealment of evidence, and hot pursuit of a fleeing suspect.  **Blasco**, supra.

-12-

The Eleventh Circuit has recognized that the need to invoke the exigent circumstances exception is particularly compelling in narcotics cases because narcotics can be so quickly destroyed. **U.S. v. Tobin**, 923 F.2d 1506, at 1510.

The mere presence of contraband however, does not give rise to exigent circumstances. **US. v. Salgado,** 807 F.2d 603, 609.

As the Ninth Circuit explained suspects who are inside their homes and unaware of their pending arrest generally have no reason to destroy the fruits of their crimes. Likewise, without more there is little reason for them to endanger the lives of themselves or others. Consequently, law enforcement confronting this type of situation can, without great difficulty, maintain surveillance of the premises and either wait to effectuate a valid public arrest when the suspects emerge or seek an arrest or search warrant from a neutral magistrate. **U.S. v. George**, 883 F.2d 1407, 1413-1414.

The mere existence of an ongoing conspiracy is insufficient to create exigent circumstances. **U.S. v. Salgado,** id., at 605.

Also the possibility that evidence will be destroyed is not enough otherwise the requirement of a warrant would have little meaning in the investigation of drug crimes. **U.S. v. Allard**, 600 F.2d 1301. To hold otherwise would render the Fourth Amendment impotent, where the police have ample opportunity to obtain a warrant but fail to do so.

The instant (Whitely) is much like that of **U.S. v. Morales**, 171 F.3d 978. The officers did not face any serious exigency concerns. The record reflects no evidence that the contraband was about to be removed or destroyed. The officers could have waited while a search warrant was obtained with little or no danger to the officers guarding the premises. Further, the suspects did not know that the officers were present outside the premises.

These facts and circumstances do not support the Court's finding of exigency. Therefore, without probable cause and exigent circumstance, the warrantless search and arrest was unreasonable. Absent consent the officers were without authority to seize or arrest or conduct the subsequent search. The fact that the officers obtained a warrant some three (3) hours after they entered and searched the premises and arrested the occupants is of no legal consequence.

The agents placed all subjects into a patrol car for transport to the Russell County Jail, and upon being placed in the patrol car Petitioner noticed that the Fire Department was on the scene evacuating the entire mobile home park.

Agents again entered the residence to search and seize various chemicals and to preserve evidence. Also to do a protective sweep.

It also seems ironic to Petitioner that these agents at no time before the raid were ever in concern for not only the safety of their own lives but also the residents that live in close proximity to the residence of Petitioner until after the raid.

On pages 22-23 of Recorders Transcript of Suppression Hearing the Court determined that although Petitioner did not have any standing on the arrest of co-defendant Moseson. That this arrest was in fact used to gain entry into the residence of Petitioner. See Pages 22-23 of Transcript (Exhibit C).

On Page 37 of the Transcript of Suppression Hearing the states attorney asks the Court to observe that the information received from the informant was what the officer used to determine exigency to proceed to the residence without a warrant. See Page 37 of Transcript (Exhibit D).

-14-

On Page 38 of the Transcript of Suppression Hearing the Trial Court observed that exigency was already established before the questioning of any of the defense attorney's witnesses had been called, showing bias and prejudice against the Petitioner.  See Page 38 of Transcript (Exhibit E).

On Page 70 of the Transcript of Suppression Hearing the State's Attorney knowingly forced co-defendant Meadows to give false testimony to the Court to maintain a plea agreement.  This is very clear from the record.  See Page 70 of Transcript (Exhibit F).

On Page 75 of the Transcript of Suppression Hearing the State's Attorney explained to the Court that the informant had given the agents information that established exigent circumstances to act as the agents did in going to the residence.  And seize everyone and everything.  See Page 75 of Transcript (Exhibit G).

On Page 76 Defense Attorney stated that the agents created exigency to circumvent the requirement of obtaining a warrant by the arrest of Moseson co-defendant on the Petitioner's private property.  See Page 76 of Transcript (Exhibit H).

### U.S. v. Johnson, 333 US 10

Crime even in the privacy of one's own quarters, is of course, of grave concern to society, and the law allows such a crime to be reached on proper showing.

The rights of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.

Where the right of privacy must reasonably yield to the right to search is, as a rule, to be decided by a judicial officer, not by a policeman.

The agents then obtained a warrant for three (3) hours after the initial illegal arrest of Petitioner and co-defendants in an effort to cure their illegal seizure of everyone and everything.

This warrant was not signed by proper authority. The signature on the warrant is not believed to be that of Judge Funderburk and even if it was it does not fall within the judges jurisdiction.

Petitioner's residence is located which is outside the jurisdiction of the Phenix City, Alabama, city limits. Judge Funderburk is a Phenix City municipal court judge. The time frame was altered to justify the time frame of the search. (See Exhibit I).

The warrant was not supported by an affidavit and there is no evidence that the warrant was issued under any sworn oath statement, making the warrant null and void.

Petitioner was not present during the search and seizure of the evidence used against him at trial. This is due to the agents having Petitioner and all co-defendants transported to the Russell County Jail immediately following their arrest.

These agents have continuously given false testimony concerning the events leading up to the arrest of Petitioner and the raid on his residence, which is clear from the Reporter's Transcript in this case.

This false testimony was given in an effort to change the outcome of the proceedings and was accomplished by the fact that there was no sworn oath or affidavit for a warrant to show person, places, or things that were to be searched for and no probable cause, therefore leaving the officers with the need to cause exigency to circumvent the warrant requirement, and Petitioner avers they did just that as the record clearly reflects.

-16-

Petitioner also shows that on appeal he was represented by the Honorable J. Michael Williams, an attorney who is a member of the Alabama State Bar. And Petitioner shows that if this court does reach the conclusion Mr. Williams did not follow the rules of court instituted by the State of Alabama. That this court should acknowledge that this violation is of no fault of Petitioners, because appellate attorney has maintained the appeal was proper.

Petitioner was shipped to private prison in Mississippi by the State of Alabama and therefore at the time of the filing of the brief to the Court of Criminal Appeals Petitioner had absolutely no access to any legal materials whatsoever.

Because the prison in which Petitioner was housed had no Alabama law materials at all, and very little federal materials, leaving Petitioner without knowledge of the contents of the brief until long after submission to the court. The brief was subsequently forwarded to Petitoner from Alabama Department of Corrections from Ventress Correctional Facility where he had been previously housed.

This hardship prejudiced Petitioner beyond his own control. Therefore, by considering this authority relied upon by the Eleventh Circuit Court of Appeals and recognized by the Supreme Court. This court should discard the states argument that Petitioner is procedurally defaulted from raising the gound of illegal arrest and also enter a judgment that the ground of unconstitutional search and seizure has not been reviewed on the merits.

Wherefore, these facts and circumstances considered this Honorable Court should enter a judgment holding that the trial court erred by not suppressing the evidence used against Petitioner at trial and reverse this case.

In the answer filed July 12, 2005, the State also claims that the Petitioner is not entitled to relief on the claim of

### GROUND THREE

### UNCONSTITUTIONAL DUE PROCESS VIOLATIONS

Because the State claims that the reasons for the courts failure to allow expert witness Dr. John Hyatt to testify is a matter of state law and that the Statute §13A-12-231 prohibits the need to have an expert rebut the State's evidence that the amount of methamphetamine in the mixture would be irrelevant as long as there is presence of the illegal drug in the mixture regardless of percentage.

Petitioner avers that the State's allegation that he is entitled to no relief by this Habeaus Court is not only false but error.

Defense counsel prepared this defense with the Court's approval and the State of Alabama did in fact appropriate the funds in advance for the expert to do the analysis of the evidence used against the Petitioner at trial.

### Jones v. U.S., 526 US 227

It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalty to which a criminal defendant is exposed.

It is equally clear that such facts must be established by proof beyond a reasonable doubt. **Apprendi**, 530 US at 490 quoting **Jones**, 526 US at 252-253.

Therefore, Petitioner concludes that the Prosecutor and subsequently the Trial Court enhanced a possession charge under Alabama Statute 13A-12-212 to be enhanced to a Trafficking Charge and conviction under Alabama Statute 13A-12-231.

```
Drugs and Narcotics  Key 46
138....
138.11  Narcotics and Dangerous Drugs
138.11(A)  Regulations
138K45  Construction and Operation of Regulations
138K46  Substances Regulated and Exceptions
```

Where illegal drugs are easily distinguished from and easily separable from legal substances, only the weight of the illegal drug should be counted.  Alabama Code, 1975, §13A-12-231

Petitioner avers that the independent experts testimony would have shown the amount of illegal substance in the mixture of less than three (3) grams of one thousand four hundred ninety-one (1491) grams was actual methamphetamine and that not only is the illegal substance very easily known to be seperated but also must be seperated from the liquid mixture then the liquid discarded, leaving only three (3) grams or less of actual methampetamine.

The State's expert did not take a quantative analysis and subsequently refused to testify to the results of the quantative analysis results taken from the defense expert.

Therefore, the jury had no possibel way of determining the amount of methamphetamine Petitioner was actually in possession of.

Therefore, the Trial Court was in error by excluding the experts testimony, subsequently violating the Petitioner's due process rights to a fair trial.

The Statute 13A-12-231 in itself violates the fundamental fairness principal of due process as set forth in the Fifth Amendment to the United States Constitution and, also acts as a catchall to allow prosecutors to enhance possession of small amounts of illegal drugs to trafficking crimes.  It also violates equal protection.

This is accomplished by not allowing the jury to decide from a truthful fact finding procedure of evidence the truthful amount of illegal drugs that are charged in the indictment by excluding the evidence of the truthful amount of the illegal drug.

-19-

Petitioner shows that only a minute amount of approximately three (3) grams of more that one thousand four hundred and ninety (1490) grams of mixture was actual methamphetamine less than one (1) percent being illegal drug.

The Court allowed defense experts findings to be placed into evidence then instructed defense counsel that she could in fact question the state's expert of the defense expert's findings concerning quantity.

However, upon questioning state's expert of findings of defense expert states expert refused to answer concerning actual amount of illegal drug mixture. Therefore, the jury could not know the actual amount of drugs in the mixture subsequently the jury could only consider that there was an erroneous 1490 grams of methamphetamine. (See Exhibit K).

### In Re Winship, 397 US 358, 364

It has been settled throughout our history that the Constitution protects every criminal defendant "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

### U.S. v Gaudin, 515 US 506, 511

It is equally clear that the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged."

Petitioner was charged by indictment of having been in possession of twenty-eight (28) grams or more of methamphetamine in a mixture.

Petitioner obtained absolute scientific proof beyond any doubt that he possessed less than three (3) grams of methamphetamine in a mixture weighing more than fourteen hundred (1400) grams, that were not intended for sale or trafficking.

-20-

Therefore, by forbidding the jury in this case to understand and know that there was less than three (3) grams of methamphetamine in the mixture of more than fourteen hundred (1400) grams enhanced a mere charge of "possession" punishable by up to ten (10) years maximum to a "trafficking" charge punishable by up to ninety-nine (99) years. Petitioner received a thirty-five (35) year sentence.

### Vipperman v. State, (1980) 96 Nev. 592, 614 P.2d 532

Due Process clause assures accused right to introduce into evidence any testimony or documents which would tend to prove theory of his case.

### State v. Fish, (1980) 190 Mont. 461, 622 P.2d 1072

To improperly exclude evidence and testimony offered by defendant as rebuttal to essential element of crime charged denies defendant full evidentiary hearing and deprives him of right for a fair trial.

### Moyer v. Peabody, (1909) 212 US 78

Due Process of law depends on circumstances varying with subject matter and necessities of situation.

### Gray v. Rowley, (1979 CA5 LA) 604 F.2d 382

Fifth Amendment fundamental fairness of due process is violated when criminal defendant is denied opportunity to have expert of his choosing examine evidence whose nature is subject to varying opinion "critical evidence" is material evidence of substantial probative force that could induce reasonable doubt in minds of jurors to avoid conviction.

The Petitioner avers that no man of ordinary intellect would know that he could be convicted for the crime in which he cas convicted under the circumstances such as Petitioner.

Therefore, the jury in this case could not have known the total facts surrounding Petitioners degree of guilt without the testimony and facts of defense expert Dr. John Hyatt.

-21-

Therefore, the Trial Court was in error for not allowing the testimony of this "critical" defense expert and the Alabama Court of Criminal Appeals has not reviewed this issue properly.

Petitioner asserts that the issues raised in this claim of Ground III Unconstitutional Due Process violations is subject to review by this Habeaus Court and is not a matter of state law and shows the state's claim on thin issue should be also disregarded.

It would also result in a fundamental miscarriage of justice to allow the Petitioner to remain incarcerated for the crime of "Trafficking" in which the record clearly shows he did not commit for a term of thirty-five (35) years.

Petitioner strongly asserts that this Habeaus Court should review the complete record in this case to better understand that not only has Petitioner's constitutional rights been disregarded but have been completely ignored by the entire judicial state court process of trial and appeal by the State of Alabama.

Wherefore, all premises considered Petitioner respectfully requests this Honorable Court to grant the Writ of Habeaus Corpus Petition and/or order an evidentiary hearing in this cause and/or an order reversing this case or any other remedy as justice shall require.


Respectfully submitted this _15th_ day of September, 2005.

Jerry E. Whitley, pro se
AIS #227246, Dorm 9A
Ventress Correctional Facility
P.O. Box 767
Clayton, AL  36016

-22-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been forwarded by prepaid United States Postal Service by placing said in the Mailbox at Ventress Correctional Facility, P.O. Box 767, Clayton, AL, 36016 on this ___15ᵀᴴ___ day of September, 2005, to the following:

    (1)   Office of the Attorney General
           Criminal Appeals Division
           11 South Union Street
           Montgomery, AL  36130

    (2)   Clerk of the United States District Court
           for the Middle District of Alabama
           P.O. Box 711
           Montgomery, AL  36101

Jerry E. Whitley, Petitioner, pro se
AIS #227246, Dorm 9A
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016

-23-